NADINE NEWPORT v. MONTGOMERY WARD & COMPANY, a Corporation, and HAROLD HART and MAE COOPER, Appellants.—127 S. W. (2d) 687.

Division One, May 2, 1939.

*L. E. Oliphant* and *Watson, Ess, Groner, Barnett & Whittaker* for appellant.

648

*Maurice O'Sullivan, Harold Waxman, R. W. Cummins* and *Chas. N. Sadler* for respondent.

PER CURIAM:—Plaintiff sued appellants, Montgomery Ward & Company, Harold Hart and Mae Cooper, to recover damages for false arrest. There was a verdict and judgment for plaintiff in the sum of $12,000 actual and $12,000 punitive damages. An appeal was duly taken.

Mae Cooper was a house detective for defendant, Montgomery Ward & Company, and Hart was in charge of the house police for that company. Plaintiff lived in Kansas City, Kansas. On June 27, 1936, shortly after two o'clock, plaintiff in company with two of her friends, Ruth Maxon and Flo Taylor, went to Kansas City, Missouri, for the purpose of doing some shopping. They went to the retail store of defendant Montgomery Ward & Company. The evidence showed that after looking at some dresses they separated. Later plaintiff and Ruth Maxon met on the outside of the store, where they had agreed to meet, and were waiting for Flo Taylor when defendant, Mae Cooper, accosted them and informed Ruth Maxon that she was under arrest for shoplifting. Plaintiff accompanied Mrs. Maxon and Mrs. Cooper to the office of defendant Hart, located on one of the upper floors. They were told to remain there while Mrs. Cooper returned to the store for the purpose of locating Flo Taylor. In a

short time Mrs. Taylor was found and was also taken to Mr. Hart's office. The police were called and plaintiff and her two companions were taken to the police station, booked for investigation and held until the next day, Sunday, at about eleven o'clock, when they were released on bond to appear at police court on Monday morning. They appeared, had a hearing, and Mrs. Maxon and Mrs. Taylor were found guilty of petit larceny and fined $25 each. Plaintiff was discharged. This suit followed.

The answer of defendants was a general denial. At the trial defendants maintained that they did not arrest plaintiff nor cause her arrest. Mrs. Cooper testified emphatically that she informed plaintiff she was not under arrest and she need not go with her to Mr. Hart's office. Defendant Hart also testified that he informed plaintiff she was not under arrest and could go home. These defendants further testified that plaintiff stated she was with these people, that is, Mrs. Maxon and Mrs. Taylor, and she would stay with them; that she voluntarily went with the police when they took the other two to the police station. Plaintiff, on the other hand, emphatically denied that she was ever told she was not under arrest, but asserted that Mrs. Cooper arrested her by commanding her to go to the office of defendant Hart. Plaintiff testified that there she was requested to make and sign a statement; that when the police arrived defendants Hart and Cooper referred to plaintiff and her companions as three shoplifters; that the police thereupon took her and her two companions to the police station. It was conceded that all three women were booked for investigation and denied bail until the next day; that they were photographed and their finger prints taken; that these finger prints and photographs were sent to the various bureaus for the identification of criminals. Defendant Cooper asked for and was given a photograph of plaintiff which she placed in the files of the defendant company for future reference. This picture of plaintiff was taken with a card hung about her neck marked KCPD 24814. Plaintiff's husband went to the police station and attempted to see her and give bond but was not permitted to do so. When plaintiff and her companions were taken to Hart's office each had a bag. Plaintiff had a hat bag and the other two had shopping bags. These bags were in their possession when they entered defendant's place of business. Mrs. Cooper testified that she saw Mrs. Taylor and Mrs. Maxon take something from a rack at the store but that she did not see plaintiff take anything and therefore did not place her under arrest. A dress valued at $3.98 was found in Mrs. Maxon's bag, and a skirt valued at $1.98 was found in the bag belonging to Flo Taylor. Plaintiff's hat bag contained only her purse. There was evidence that Mrs. Cooper testified at the trial in the police court that she saw one of the ladies take a skirt, the other a dress and saw plaintiff start to take something. Mrs. Cooper denied that she so

testified concerning plaintiff. Mrs. Maxon's deposition was read, and her testimony corroborated that given by plaintiff. We learn from the evidence that a few days after the trial in the police court Flo Taylor went to England to join her husband.

In the first assignment briefed appellants assert that the trial court erred in overruling their objection to a portion of the argument to the jury made by respondent's counsel. Counsel for respondent in discussing private police stated that they were known as the company's Cossacks; that Cossacks referred to those Russian soldiers, at the time of the Czar, who rode through Russia "lashing out and riding them under their horses hoofs." At this point the following occurred:

"Counsel for Appellant: If the court please, I think that is improper argument. There is no evidence of any such condition here.

"The COURT: Overruled.

"Counsel for Appellant: It is inflammatory and prejudicial.

"The COURT: Overruled."

The record does not show that that line of argument was continued. We do not approve the argument made, but the comments of appellants' counsel did not amount to an objection. No request was made of the court for any particular ruling. We do not deem the incident sufficiently serious to justify us in reversing the case for retrial. [Walker v. St. Joseph Belt Ry. Co., 102 S. W. (2d) 718, l. c. 725, 726 (9) (10); Randol v. Kline's, Inc., 330 Mo. 343, 49 S. W. (2d) 112, l. c. 117, 118 (9, 10) (11).] .

Appellants assert that the trial court erred in refusing to permit them to prove that plaintiff had admitted she knew her companions had taken merchandise. In the brief appellants assert that in a false imprisonment case, when punitive damages are sought, it is proper to admit evidence of mitigating circumstances and proof of plaintiff's misconduct or provocation. Many cases are cited in support of that statement. In many of them it was conceded that the defendant had arrested or had caused the arrest of plaintiff. In such cases evidence of plaintiff's conduct, which tended to prove justification or mitigation, is of course admissible. In this case defendants maintained that they did not arrest plaintiff or cause her arrest. But, be that as it may, the record shows that the trial court did not exclude the evidence referred to. Plaintiff, on cross-examination, admitted that she refused to give the name of her other companion to defendants, Mae Cooper and Hart, before Flo Taylor was arrested. This occurred in Mr. Hart's office. Plaintiff and her two companions were asked to make statements while in Hart's office. These statements were reduced to writing and signed. At the trial appellants offered them in evidence and plaintiff's counsel objected. The court overruled the objection as to the statement made by respondent. Then appellants' counsel stated:

"In view of counsels' position if I can't get all three of them in, I don't want any of them, so I will withdraw them."

In the statement signed by respondent, as it appears in the record, we find the following:

"While in the store Flo Taylor took one skirt priced at $1.98 and concealed it in a paper bag which she was carrying. Ruth Maxon took one dress priced at $3.98 and concealed it in a paper bag which she had brought with her.

"I knew that this was not their property and that they had no right to take it. . . .

Plaintiff, while on the stand, denied that she saw either of her companions take merchandise. So we find that appellants had the opportunity to show that plaintiff admitted she knew her companions had taken merchandise, but counsel voluntarily withdrew the offer. The ruling of the court of which appellants complain was made when defendant Hart was on the witness stand. He was asked if plaintiff made statements that she knew Ruth Maxon and Flo Taylor had taken merchandise. An objection that the question was leading and suggestive was sustained. This was followed by a discussion between court and counsel. Counsel for appellants was asked the purpose of the evidence and stated it was for the purpose of impeachment plus. The court then sustained the objection. Appellants refused to introduce the best evidence they had, that is, the written statement of plaintiff. The question to which an objection was sustained was considered by the court as leading and suggestive. It is apparent therefore that appellants are in no position to complain.

Instruction No. 2 was assailed on the theory that it gave the jury a roving commission to assess punitive damages. The portion of the instruction criticized reads as follows:

"The court further instructs you that if your verdict is in favor of plaintiff and you award her actual damages, if you further find and believe from the evidence that the acts and conduct, if any, of the defendants against whom you find a verdict, if any, which caused (if at all) such unlawful arrest, if any, of plaintiff, were willful, wanton, wrongful, unlawful and malicious, and were done by such defendants, if at all, without provocation, cause or excuse, then, in your discretion you may award plaintiff, in addition to actual damages, if any, exemplary or punitive damages by way of punishment to such defendants for such wrongful acts, if any, and as a wholesome warning to others."

We do not deem the instruction subject to the criticism made by appellants. It authorized a verdict for punitive damages only if the jury found that the *acts* and *conduct* of defendants, which caused the arrest of plaintiff, were willful, etc., and without just cause or excuse. If the acts of appellants caused the arrest of plaintiff and

the arrest was made without probable cause and through malice, then punitive damages were authorized. [Hutchinson v. Sunshine Oil Co. (Mo. App.), 218 S. W. 951, l. c. 954 (4, 5); Stubbs v. Mulholland, 168 Mo. 47, 67 S. W. 650; Laster v. Chaney et al. (Miss.), 177 So. 524; Bowles v. Creason (Ore.), 66 Pac. (2d) 1183; Lindquist et al. v. Friedman's, Inc., 366 Ill. 232, 8 N. E. (2d) 625; Greaves v. Kansas City Jr. Orpheum Co. et al., 229 Mo. App. 663, 80 S. W. (2d) 228, l. c. 235 (2-4).]

■ The amount of the verdict, for both compensatory and punitive damages, is claimed to be grossly excessive. On the question of compensatory damages we must consider the following: Plaintiff bore a good reputation. No attempt was made to show the contrary. She was reared in the country in the State of Oklahoma. She had been in Kansas City only a few years and had known Mrs. Maxon about a year and Mrs. Taylor about six months. She was twenty-three years old and married. She was taken in custody of the police on Saturday afternoon, compelled to spend the night in jail and remain there until Sunday morning at eleven o'clock. She was taken from one police station to another in a police wagon and placed in a cell with a number of negro women. Her finger prints were sent to Washington, Jefferson City and Kansas City bureaus for identification of criminals. Her photograph was placed in what is commonly referred to as the "rogues' gallery." Montgomery Ward & Company retained a photograph in their files for future reference. Plaintiff was compelled to pass through the "show-up room" at the police station. The evidence disclosed that appellants were aware of all this. Plaintiff testified that she and her companions were placed in the "show-up room" at Mrs. Cooper's request. The jury found that appellants caused plaintiff's arrest. Appellants do not contend that there was probable cause for her arrest. Considering all these facts we are not prepared to say that the verdict of $12,000 compensatory damages was so excessive as to justify our interference. In the case of Randol v. Kline's, Inc., 330 Mo. 343, 49 S. W. (2d) 112, cited by appellant, a verdict of $12,500 actual damages was sustained. In our judgment the plaintiff in that case did not suffer more damages than plaintiff in this case. In Thompson v. St. Louis-San F. Ry. Co. (Mo. App.), 3 S. W. (2d) 1033, a verdict for $500 was sustained, but in that case the plaintiff, a man, was only detained about two hours and was never placed in jail. In the case of Irons v. American Ry. Exp. Co., 318 Mo. 318, 300 S. W. 283, l. c. 292, 293 (18), this court en banc approved a judgment in an action for malicious prosecution for $7,000 actual and $13,000 punitive damages.

We are of the opinion that $12,000 punitive damages was an excessive verdict. There was no showing made in this case as to the financial condition of any of the defendants. Defendants maintained that they had no cause to arrest plaintiff and did not do so.

A jury found that defendants did arrest plaintiff. However, we must not overlook the fact that plaintiff's two companions had stolen property in their possession which had been taken at the store a short time before their arrest. As we veiw the whole situation the arrest of plaintiff was the result of circumstances in which plaintiff placed herself, we may presume innocently, as did the little dog Tray in an old adage, who did not bark loud but was shut out because of his crowd. So in this case, plaintiff was arrested and suffered the ordeal that followed because it so happened that her companions had taken property, a circumstance, which, according to defendants' defense and theory, did not constitute probable cause to place plaintiff under arrest. Plaintiff's arrest without probable cause constituted legal malice. [Oliver v. Kessler (Mo. App.), 95 S. W. (2d) 1226, 1. c. 1229 (5, 6).] Plaintiff introduced evidence that defendant Cooper testified at court that she saw plaintiff start to take some merchandise. Mrs. Cooper denied this, but she admitted that she did nothing to have plaintiff released. Hart was at the police station on Saturday night and did nothing to release plaintiff. The evidence does not show any personal malice against plaintiff because defendants did not know her. Nevertheless the circumstances of the arrest and what followed justified punitive damages. In Randol v. Kline's, Inc., supra, the punitive damages assessed were $25,000. This court required a *remittitur* of $20,000. Judging the conduct of the defendant in the Randol case and that of the defendants in this case and considering other cases upon this point, we deem that $2000 punitive damages would be sufficient. [See 25 C. J. 566, secs. 182, 183; also 17 C. J. 997, sec. 298; Wehmeyer v. Mulvihill, 150 Mo. App. 197, 130 S. W. 681, 1. c. 685, 686; Hutchinson v. Sunshine Oil Co. (Mo. App.), 218 S. W. 951, 1. c. 953 (1-3).]

If plaintiff will within ten days enter a *remittitur* of $10,000 the judgment of the circuit court will be affirmed in the sum of $12,000 actual damages and $2000 punitive damages. Otherwise the judgment of the circuit court is reversed and remanded for retrial. It is so ordered. All concur.