Lola E. Hancock, Administratrix of the Estate of Eugene P. Hancock, v. Kansas City Terminal Railway Company, a Corporation, Appellant.—146 S. W. (2d) 627.

Division One, January 4, 1941.

*Samuel W. Sawyer, John H. Lathrop* and *James F. Walsh* for Kansas City Terminal Railway Company.

168

*Cowgill & Popham, Madden Freeman & Madden* and *Alfred Kuraner* for respondent.

HYDE, C.—This is an action, under the Federal Employers' Liability Act (45 U. S. C. A., secs. 51-59) for $50,000 damages for death of plaintiff's husband. The jury returned a verdict for the full amount sued for, after which the trial court ordered a *remittitur* of $20,000. This *remittitur* was made and judgment was entered for $30,000. Defendant has appealed from this judgment.

This is the second appeal in this case, former judgment (for same amount after same *remittitur*) having been reversed and the cause remanded because of prejudicial argument by plaintiff's counsel. [Hancock v. Kansas City Terminal Ry. Co., 339 Mo. 1237, 100 S. W.

(2d) 570.] The full statement of the facts appears in that opinion (100 S. W. (2d) l. c. 571-572), and reference is made thereto for the statement of facts, which is hereby adopted. Any different or additional showing, in so far as this may affect questions for decision herein, will be referred to later in this opinion. Plaintiff's theory of negligence was that, in starting to move an interstate car, Hancock (switch foreman) threw the switch and his switch engine, with the tender ahead, started to back (west) ôn the lead track; that Hancock then attempted to get on the footboard of the moving tender from the south side of the track; and that switchman McCormack, who was riding on this footboard, standing on the inside (north end) near the drawbar, suddenly stepped to outside (south end), came in contact with Hancock, and caused him to fall in front of the tender by which he was run over and killed. Plaintiff's eyewitness Reinhardt, was not present at the second trial, and his former testimony was read. (He was in a Veteran's hospital.) Switchman McCormack, who denied that he changed his position or came in contact with Hancock, testified to substantially the same version as at the first trial. There was likewise substantially the same testimony, as to the main facts, by other witnesses.

Defendant's first assignment is that "the trial court erred in the admission of evidence of witness Weston, a brother of Mrs. Hancock, in permitting him to answer the question of plaintiff's counsel whether McCormack came to the home of deceased's widow and stood by the coffin while her husband's body lay there awaiting burial and that he was shaking and showing emotion, and that Weston then followed him out, after observing what he had described, and when he asked him how the accident happened to John permitted him to testify that McCormack said, 'I and John got mixed up, we was going down to couple on to some cars and I got over on the south end of the footboard in a position to make the coupling, thinking that John would get on the footboard next to the drawbar and we came together.' " Concerning this, defendant says: "Whether McCormack shook or showed emotion while standing by the coffin was not a pertinent issue in the case and therefore was not the subject of impeachment. Furthermore, the evidence as a whole was inadmissible since there was no proper identification of McCormack by Weston."

The foundation for such impeachment was in McCormack's cross-examination by plaintiff's counsel, as follows:

"Q. . . . Now, after this thing was all over and while the body of this man lay out at his home, you went out there, didn't you? A. Yes sir. . . .

"Q. Do you deny that you stood before the coffin there, shaking? A. I didn't.

"Q. Do you deny he (Weston) followed you out and asked you how Gene Hancock lost his life? Do you deny that happened? A. Yes, sir.

"Q. Did you have any talk with Mr. Weston? A. No, sir." (He also denied making the specific statement above set out.)

As to the matter of identification, defendant cites Janis v. Jenkins (Mo.), 58 S. W. (2d) 298. However, no objection was herein made on the ground of identification, and Weston definitely stated that McCormack was the man he saw and asked how the accident happened, while in the Janis case the witness said that "he could not testify that the man he talked with was Stevens" (the driver, it was claimed made the inconsistent statement), and that he "would not go on record saying that it was he." Weston only said that he "had never met McCormack before," but expressed no doubt as to his identity. This distinguishes this case from the situation in the Janis case.

As to the question about the above mentioned statement alleged to have been made to Weston by McCormack, the record shows the following:

"MR. LATHROP: Wait a moment now. I object to that question as pure hearsay, not admissible in evidence, not binding on this defendant.

"THE COURT: Sustained in part. In that, gentlemen, you will not consider this testimony here in determining the issue of negligence or no negligence. But it should be considered by you only as to the credibility and weight that you may give to this testimony, together with the testimony of the witness, McCormack. Answer the question yes or no. (Exception by defendant.)

"MR. LATHROP: Wait just a minute. May I make a request?

"THE COURT: Yes.

"MR. LATHROP: I request that your Honor further instruct the jury that this question, if answered in the affirmative, even if believed by the jury, is not evidence and must not be considered as evidence, by the jury, that the occurrence happened in the manner related in the question.

"THE COURT: I, in substance, have so directed them, but you are directed in the language of Mr. Lathrop.

"Q. (By Mr. Popham) Now, tell the jury whether or not Mr. McCormack, at that time, made to you that statement? A. Yes, he did."

No further action was requested at that time. The statement was, of course, inadmissible as evidence "that the occurrence happened in the manner related in the question." [Shelton v. Wolf Cheese Co., 338 Mo. 1129, 93 S. W. (2d) 947.] However, at defendant's request, the court also gave a written instruction (with the other instructions submitting the case) to that effect; and defendant does not contend that anything requested was refused, so that there is nothing for review concerning it. However, defendant insists that "plaintiff's counsel had no right to bolster up his case by impeaching evidence that he (McCormack) did shake and show emotion beside

the coffin, which was not pertinent to the issues in the case;" and that allowing such testimony was erroneous and prejudicial. The record shows the following occurred:

"Q. (BY MR. POPHAM) While he was standing there by that coffin, tell the jury whether or not he was shaking and showing emotion.

"MR. LATHROP: I object to that as leading and suggestive and wholly immaterial to any issue here.

"THE COURT: Overruled. (Exception by defendant.)

"Q. (By MR. POPHAM) Answer yes or no. A. He did seem rather nervous and upset.

"Q. And was there anything about his conduct there that caused you to follow him out and ask him some questions? Answer yes or no.

"MR. LATHROP: I object to that as calling for a conclusion of the witness—

"THE COURT: Sustained."

It will be noted that defendant's first objection was only to the form of the question and its materiality. It will also be noted that plaintiff did not show by Weston that McCormack "was shaking and showing emotion." Instead of answering this question "yes or no," he made an answer which was not responsive, which showed nothing as to what McCormack actually did, and was in the nature of a conclusion, by saying: "He did seem rather nervous and upset." Defendant did not move to strike out this answer, or any part of it; but did object to the next question about McCormack's conduct on the ground that this was "calling for a conclusion." This objection was sustained and there were no further questions about McCormack's conduct. In this situation, we cannot hold that there was any reversible error in the rulings on impeachment testimony.

Defendant's further assignments are excessive verdict, even after the *remittitur* made in the trial court; and that such excessiveness was the result of passion and prejudice so that it cannot be cured by *remittitur*. As evidence of passion and prejudice, defendant points to the size of the original verdict ($50,000); to the fact that it was returned in twenty minutes after the case was submitted; and that plaintiff's counsel asked the jury to render a verdict for $50,000, the full amount sued for (also suggested in counsel's opening statement) although this court's opinion on the former appeal said that the evidence did not warrant such a verdict. [On the two latter points, see 64 C. J. 1019, sec. 808; Maurizi v. Western Coal & Mining Co., 321 Mo. 378, 11 S. W. (2d) 268; Perkins v. Terminal Railroad Assn., 340 Mo. 868, 102 S. W. (2d) 915.] Defendant also points out portions of the argument of plaintiff's counsel as improper and responsible for passion and prejudice. Some of these were: criticism of defendant concerning bringing in its records of the character of the work

being done at the time Hancock was killed; the statement that he "would rather take Reinhardt" than defendant "after this company has done what it has done in this case;" the argument based on Weston's testimony, claiming that McCormack was "shaking like an aspen leaf, affected by his guilty conscience," before the coffin; "the suggestion that Mrs. Hancock in attempting to sell sewing machines (to support herself and son) had doors slammed in her face;" the statement that Reinhardt's crime (conviction for first degree robbery shown as impeachment) was "an indiscretion committed when he was a beardless youth" (convicted at 24, and plaintiff argued his subsequent good record and steady employment); and that "McCormack expressly admitted that he was on the south end of the footboard when there was no such evidence." Defendant made no objection at the time to most of the matters of which it now complains. Its objection as to what was said concerning Reinhardt (which was overruled) was that it was "not based on any evidence in this case." It objected to the statement about McCormack's admission of his position, "as not the evidence in the case." The court made no direct ruling on this but said "the jury will remember the evidence." No further objection or request was made. It seems, from all that was said preceding this objection, plaintiff's counsel meant to argue that physical facts, together with McCormack's statement that he was south of the south rail in one step after he left the footboard amounted to an admission of his position on the south end. Unquestionably, plaintiff's counsel made a vigorous and effective argument. He also strained the limits of the record to make the facts appear most favorable to the contentions of his client; or, at least, he made strained inferences, beyond what were reasonable inferences, from the facts in evidence. However, it is usually left to opposing counsel to point out erroneous statements and falacious inferences to the jury. ■

Of course, when false statements are deliberately made to deceive, or there is improper matter injected for the purpose of arousing passion or prejudice, which it seems reasonable to believe did mislead or improperly influence the jury, a verdict so induced will not be permitted to stand. However, because trial courts have such an obvious advantage for the determination of this question, appellate courts usually leave this matter to their discretion and defer to their judgment. [Rouchene v. Gamble Construction Company, 338 Mo. 123, 89 S. W. (2d) 58; Marlow v. Nafziger Baking Co., 333 Mo. 790, 63 S. W. (2d) 115; Goyette v. St. Louis-San Francisco Ry. Mo. (Mo.), 37 S. W. (2d) 552; Kelso v. W. A. Ross Construction Co., 337 Mo. 202, 85 S. W. (2d) 527; Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S. W. (2d) 687.] The entire arguments, for both sides, are set out, and show that the case was well and vigorously presented by both sides.

174

■ Defendant cites Gardner v. Stout, 342 Mo. 1206, 119 S. W. (2d) 790. However, in that case, reversed on other grounds as to one defendant, the actual injury was slight and there was comment in the record by the trial judge that "the verdict was excessive, but he thought it should be left to the Supreme Court to reduce the judgment;" and also that "agitation, sentiment, excitement and feeling . . . was created in the case." The argument which was there disapproved, is not set out. We commented, in our former opinion, that "this was a close case of liability." Although that may still be said, nevertheless the question for the jury to decide was whether to believe Reinhardt or McCormack as to what occurred. There was better corroboration of Reinhardt's testimony, at the second trial. Likewise, some of McCormack's admissions, together with his actions in running from and remaining away from the scene of the casualty, may well explain the jury's refusal to accept his testimony. While we feel that the verdict was double the amount that we can sustain, from reading the whole record we think that such excessiveness can properly be cured by *remittitur*. [See discussion in Clark v. Atchison & Eastern Bridge Co., 333 Mo. 721, 62 S. W. (2d) 1079; see also Kimberling v. Wabash, 337 Mo. 702, 85 S. W. (2d) 736, and cases cited.] We should not find that passion and prejudice resulted merely because of the size of the verdict, or because the case was aggressively and vigorously presented to the jury by counsel, unless these things are coupled with other matters from which it reasonably appears that defendant did not have a fair and impartial trial.

■ We know of only two death cases in this State, under the Federal Employers' Liability Act, in which judgments have been affirmed for $30,000, without any element of conscious pain and suffering. [These cases are Moran v. A., T. & S. F. Ry. Co., 330 Mo. 278, 48 S. W. (2d) 881; and Truesdale v. Wheelock, 335 Mo. 924, 74 S. W. (2d) 585; see comments on these cases by Court en Banc in Sheehan v. Terminal Railroad Assn., 344 Mo. 586, 127 S. W. (2d) 657.] In the Truesdale case, the man killed was younger and left more dependents than in this case. He also had greater earnings. In the Moran case (which was a 4 to 3 decision en Banc, and while the dissent was not on damages, it would have allowed a new trial) the man killed was also younger and he left younger dependents. The majority opinion commented on the fact that defendant asked no instruction on the measure of damages, as one reason for sustaining the verdict. In Stottle v. C., R. I. & P. Ry. Co., 321 Mo. 1190, 18 S. W. (2d) 433, a $28,000 judgment was affirmed for death of a man with earnings the same as in this case. He was much younger than Hancock and also left younger dependents. In Kidd v. C., R. I. & P. Ry. Co., 310 Mo. 1, 274 S. W. 1079, a verdict for $30,000 was held excessive and a $5,000 *remittitur* required. There also the man was younger than here (with somewhat larger earnings) and left more

and younger children dependent upon him. Other cases, in which $25,000 verdicts were approved, are cited in the Truesdale case. Hancock was 38 years old with an expectancy of 29.62 years. His wife was 32 and they had one son 11. His average monthly earnings for two years preceding his death were $180.31. His wife testified that his personal expense was "probably around $25.00 a month" and that "the rest went to (her) and the boy and the home." Under these facts, in view of our former decisions, we must hold that any amount over $25,000 would be excessive.

It is, therefore, ordered that, if plaintiff will, within ten days, enter a *remittitur* of $5,000 as of the date of judgment, then the judgment will be affirmed for $25,000 as of its date. Otherwise, the judgment will be reversed and the cause remanded. *Bradley* and *Dalton, CC.,* concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All the judges concur.