Lester Guy **NELSON**, Respondent,

v.

**R. H. MACY & CO., Inc., Appellant.**

No. 24857.

Kansas City Court of Appeals.

Missouri.

Oct. 7, 1968.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 2, 1968.

Application to Transfer Denied Jan. 13, 1969.

Don B. Roberson, Kansas City, for appellant; Shughart, Thomson & Kilroy, Kansas City, of counsel.

Lillie Knight and W. Raymond Hedrick, Kansas City, for respondent.

HOWARD, Presiding Judge.

This is a suit for false arrest wherein a jury trial resulted in a judgment for respondent for $2,500.00 actual damages and $2,500.00 punitive damages. Appellant has duly appealed to this court. We shall refer to the parties as they appeared below.

Plaintiff, Lester Guy Nelson, was thirty-two years old and employed by Mutual Educators, Inc., selling encyclopedias and other educational aids door to door. On Friday, July 15, 1966, shortly before 5:00 p. m. and just prior to meeting the group of salesmen whom he supervised, plaintiff

entered the defendant's (Macy's) department store located in the Antioch Shopping Center in Kansas City, Clay County, Missouri, for the purpose of buying swim trunks and camera film. No clerk offered to wait on him in the men's department and plaintiff selected a pair of swim trunks from a rack and took them off the hanger. He did not see any clerk in the men's department but there was one at the camera counter. Plaintiff walked toward the camera counter with the swimming trunks hanging over his left arm and took a shopping list from his pocket to see what number camera film he was supposed to buy. While plaintiff was looking at the camera film he was approached by George Henthorn, an officer of the Kansas City, Missouri police department, who was also employed by defendant during his off-duty hours.

Plaintiff testified that the bathing suit was on top of his clothing and in plain view at all times. He specifically denied that he put it under his arm or under his clothing. He was wearing a suit coat and a lightweight raincoat or all-weather coat and a felt hat. There had been light rain off and on that day. Plaintiff testified that Henthorn told plaintiff to give him the bathing suit and plaintiff did so. Henthorn then asked "Do you plan to pay for this suit?" and plaintiff answered that he did. Henthorn repeated the question as to payment two or three times. Plaintiff told Henthorn "Certainly, I want to pay for this swimsuit, and I want to buy this film." Plaintiff told Henthorn that he was in a hurry, had to meet his men and had other things to do besides talking to him. Henthorn then identified himself as a police officer for Macy's and told plaintiff that if he was going to be a wise guy he could come down and see the manager. Henthorn walked behind plaintiff and directed him to walk down to the floor below and into the manager's office.

Henthorn told the store manager, Mr. Blake, that he had caught a shoplifter. Blake and Henthorn then questioned plaintiff as to his name, address, employment, etc. Plaintiff had theretofore lost his personal papers and had no identification on his person at the time. He told Blake and Henthorn that he had lost his identification but had a temporary driver's license clipped to the sunshade of his car; that he lived in Rich Hill, Missouri, but stayed at a hotel in Kansas City during the week because of the nature of his work. He had the hotel key with him. Plaintiff asked Blake and Henthorn to get the temporary driver's license from the car and to call various people at his hotel and his place of employment who could identify him; also his brother and a friend, both of whom lived near the shopping center in Clay County. They refused to do so but wrote up a report on a form prescribed by Macy's which report recited the information given by plaintiff and contained a confession that he had stolen the swimsuit. Blake asked plaintiff to sign this and he refused. It was read into the record as follows: "I hereby certify and confess that I, Lester Nelson, the undersigned, am 32, residing at Rich Hill, Missouri, 702 South Fifth Street, have been guilty of theft from Macy's, Kansas City, Missouri, having taken and concealed the following goods: One Jenson blue swim suit, size 36. I further state that this confession is made of my own free will and accord without threat or without promises of leniency, and I hereby promise to refrain from coming into Macy's in the future with the intent to obtain and keep—with the intent to keep the same without paying therefor * * *"

Plaintiff testified that Blake told him that this document was not a confession but was only a customary form used by Macy's and that if he would sign it the matter would be closed and he could go. Plaintiff refused to sign, maintaining that he had not stolen anything and all he wanted to do was buy the swimsuit and film and leave. Blake told him: "If you don't sign it, you are going to go to jail.", and Henthorn told him he had better sign it. When he continued to refuse to sign, Blake told Henthorn "Call the police. Put him in jail." Henthorn did so and a uniformed

officer arrived in about five minutes. This officer did not question plaintiff but he and Henthorn took him out of the store and placed him in a police car. He had been in the manager's office "The best part of an hour."

Plaintiff pointed out his car on the parking lot and the officers searched it, going through the trunk, the glove compartment, a briefcase and sales literature. Plaintiff's driver's license was found clipped to the sunvisor. After the search plaintiff was taken to the police station. Henthorn followed in his own car. At the police station plaintiff was booked on a charge of petty larceny in violation of a city ordinance. Plaintiff arrived at the police station a little after 6:00 p. m. and left shortly before 9:00 p. m. when his brother came and made bond for him. He sat in a small room for about an hour of this time and was locked up with other prisoners the rest of the time. Plaintiff stayed with his brother that night and drove to his home in Rich Hill the next day, Saturday.

George Henthorn was a detective on the Kansas City, Missouri, police department, and was employed by Macy's in store protection. He was hired to protect the store against shoplifters. His duties included patrolling the store watching for any unusual person or circumstances. He was to bring anyone he caught shoplifting to the proper Macy's authority. On this date he was scheduled to work for Macy's from 4:30 or 5:00 p. m. to closing time. He testified that about 5:00 p. m., he was on the second floor of Macy's when he saw plaintiff come down the aisle and enter the men's department. His attention was attracted to plaintiff because he was wearing a lightweight all-weather coat when the weather did not call for such a garment. Henthorn watched plaintiff look around the area, take a hanger with a swimsuit on it from the rack, examine the swimsuit, look around again, remove the swimsuit from the hanger and replace the hanger on the rack, look around again and then "slipped the swimming suit up under his coat under his left

arm." Plaintiff then went to the camera department and stopped, facing back toward the men's department. The swimming suit remained under plaintiff's clothes and was not visible. Henthorn went up to plaintiff and asked if he was going to pay for the swimming suit. Plaintiff said "What swimming suit?" Henthorn replied "The swimming suit you have underneath your coat." Plaintiff repeated "What swimming suit?" and Henthorn again said "The one that you have underneath your coat and beneath your arm." Plaintiff then took the swimming suit out from under his clothes and gave it to Henthorn. Henthorn testified specifically that plaintiff did not have the swimming suit over his arm. Henthorn then identified himself as a police officer and asked plaintiff to go with him to the manager's office, which he did.

It was brought out that when Henthorn testified in police court he did not mention plaintiff's question "What swimming suit?" but when asked "Did he make any statement to you?" he answered "No; he said he intended to pay for it, was the only statement he made to me."

Plaintiff was questioned by Blake and Henthorn. They testified that plaintiff told them that he was unemployed and lived in Rich Hill; that he was just passing through and showed them his hotel key; at first he said a friend had dropped him at the shopping center but later said he had driven his own car. When asked "why he did it" he said he really didn't know; he was confused and had been having a lot of problems lately, had lost his job and was having marital difficulties. (Plaintiff specifically denied making these statements.) Plaintiff had no identification but stated that he had a passport in his car. During this questioning, Henthorn filled in the information for the confession on a form supplied by Blake. He did not remember hearing Blake tell plaintiff that if he would sign the confession he could go. Blake denied making such statement. When asked the purpose of having plaintiff sign the confession, Henthorn testified

"I don't know. This is not my form or anything. I don't know what the purpose of the store is." When plaintiff refused to sign the confession Blake told Henthorn to call the police and he did so. Blake said to Henthorn "You might as well take him in because we don't know who he is and he better be checked out." Henthorn followed the police car and plaintiff to the police station where he told the officer what charges to book plaintiff on, and then he left.

We are met first with a motion to dismiss this appeal because defendant's brief does not contain "a fair and concise statement of the facts without argument" as required by Civil Rule 83.05(a) V.A.M.R. The brief is deficient in this respect but we do not believe such defect is so serious as to require dismissal. We will therefore consider the appeal on its merits.

Defendant first complains that the trial court erred in failing to direct a verdict in its favor because the arrest was lawful, as a matter of law, under the provisions of Section 84.440, RSMo 1959, V.A.M.S., because it was made by a member of the Kansas City, Missouri, police department. Section 84.440, supra, authorizes members of the Kansas City police department to make arrests without warrant in varying circumstances. One of these circumstances is "when any person may have committed an offense within view of a member of such police force." Defendant argues that plaintiff was within view of officer Henthorn during the incident and that, therefore, the arrest was legal, as a matter of law, because specifically authorized and legalized by such statute. Defendant emphasizes the words "within view" or rather "on view" as it prefers to say, and ignores the other requirements of the statute. In this statute the words "when any person may have committed an offense" are equally important with the words "within view." Both

requirements must be met before the above quoted statutory provision authorizes an arrest without a warrant. Such arrest is not legal unless an offense has been committed or the officer has reasonable grounds to believe, from what he observes, that an offense has been or is being committed. See State v. Young, Mo., 425 S.W. 2d 177, 180. Under the plaintiff's evidence, if believed, no offense was committed, and there were no reasonable grounds to so believe. For the purposes of this appeal we need not decide whether defendant's contrary evidence showed that an offense had been committed or that there was reasonable grounds to so believe. We will assume that it does. In this conflicting state of the evidence the issue was for the jury and the trial court did not err in refusing to direct a verdict on the grounds stated.

Defendant also contends that, because Henthorn was a police officer the doctrine of respondeat superior cannot be applied to impose liability on defendant for his actions. In support of this assertion defendant offers only the authority of one quotation from A.L.R. At 35 A.L.R. 645, begins a long annotation on "False arrest by employee." At page 683 it appears that defendant's quotation is based on the case of Redgate v. Southern Pac. Co., 24 Cal.App. 573, 141 P. 1191. This case involved a special California statute authorizing the governor to commission railroad and steamboat police who served at the expense of the company but at the pleasure of the governor. The statute expressly gave them police power on the companies' property and vehicles. The court held that the relation of master and servant did not exist between the company and such police and the doctrine of respondeat superior did not apply. However, the court went on to point out that, under the statutory provision making the company civilly liable for any abuse of authority by such police, such company would be liable for action taken without probable cause. The court concluded that there was probable cause for the actions taken in this case.

The quotation relied on by defendant is found at 35 A.L.R. 683:

"Where a special officer is appointed by public authority, by virtue of a statute, and paid by a private corporation or individual, the authority to make arrests is given by the statute, 'and in no sense can be said to arise from the relation of master and servant, or principal and agent, existing between the special officer and the company at whose application he was commissioned; and the fact that he is "to serve at the expense of such company" does not affect his status as that of a police officer. The rule of respondeat superior has no application where there is no evidence tending to show that the company was instrumental in causing the arrest or subsequent prosecution.' * * *"

Missouri has no such statute as was considered in the Redgate case and other similar cases cited in the annotation. Furthermore the factual situation in the case at bar is not comparable to such cases and they are of no help to us. The parties have not cited any Missouri case considering this or a similar contention and our own research has failed to reveal any. However, the foregoing annotation has assembled numerous cases from other jurisdictions on the subject and the holdings in these cases are well summarized as follows, 35 A.L.R. 681:

"It does not follow, however, that because a servant is also a police officer, all his acts are of a public nature, and where he is acting in performance of the duties for which he is employed, or his movements are actively directed by his employer,—in other words, where he represents his employer and not the public,— such employer may become liable for his acts."

■ From the evidence heretofore set out which comes from defendant's witnesses, Henthorn was hired to protect the store from and to apprehend shoplifters.

When he caught a shoplifter it was his duty to bring him to the proper Macy's authority—not the proper police or public authority. In this instance, the determination of what should be done with plaintiff was made by the store manager—not by Henthorn or any other police officer. Henthorn prepared the report or confession for Macy's—not for the police. From this evidence we can only conclude that Henthorn was acting under the direction of Macy's and was acting as a representative of Macy's and not the public. In such circumstances and as shown by the cases assembled in the foregoing annotation, the doctrine of respondeat superior applies to Macy's and Henthorn in the same manner as it does to any other employer and employee. Consequently the trial court did not err in refusing to direct a verdict for defendant.

■ The next contention of defendant is that the trial court erred in giving plaintiff's verdict directing instruction No. 2. This instruction reads as follows:

"Your verdict must be for the plaintiff if you believe:

First, that at all times mentioned herein Robert Blake and George Henthorn were agents of defendant and acting for and on behalf of defendant and within the scope of their employment, and

Second, that said Robert Blake and George Henthorn intentionally restrained plaintiff against his will.

Unless you believe the plaintiff is not entitled to recover for such restraint by reason of Instruction No. 6."

Instruction No. 6 submitted defendant's affirmative defense and reads:

"Your verdict must be for defendant if you believe:

First, defendant was engaged in mercantile trade, and

Second, defendant had reasonable grounds or probably cause to believe that

plaintiff wrongfully had taken or was taking merchandise, and

Third, plaintiff's restraint was made in a reasonable manner, and for a reasonable length of time.

The term 'wrongfully taken' as used in this instruction means stealing, that is to say, to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing, or retaining possession of his property."

Defendant asserts that instruction No. 2 is erroneous because it assumes plaintiff's arrest to be unlawful rather than requiring the jury to so find. In support of this contention defendant cites only the case of Engelbrecht v. Roworth, 236 Mo.App. 459, 157 S.W.2d 242. In that case the court pointed out that plaintiff's own evidence would justify a finding that he was guilty of an offense and that the arrest was therefore lawful and held that under such circumstances it was error to give an instruction which assumed that the arrest without a warrant was unlawful. In the case at bar defendant contends that plaintiff's evidence showed Henthorn to be a police officer and, from such fact alone, the jury could find that the arrest was lawful. We cannot agree. The mere fact that an arrest is made by a police officer does not in any way tend to prove that the person arrested had committed an offense or that the arrest was lawful. As a matter of fact, plaintiff's evidence all tends to prove that he had not committed an offense and that his arrest was unlawful. Therefore, the ruling in Engelbrecht v. Roworth, supra, is not applicable to the case at bar. This case is more like Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270, which was distinguished in the Engelbrecht opinion. See also Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68.

Defendant also contends that instruction No. 2 is erroneous because there is here a jury issue as to the lawfulness of the arrest and the instruction did not submit such issue to the jury. Where, as here, an arrest without a warrant is shown, it is presumed to be unlawful and the burden falls on defendant to both plead and prove any matter justifying the arrest, such as the guilt of plaintiff or the lawfulness of the arrest. See Pandjiris v. Hartman, 196 Mo. 539, 94 S.W. 270; Hanser v. Bieber, 271 Mo. 326, 197 S.W. 68; Burton v. Drennan, 332 Mo. 512, 58 S.W.2d 740; and Greaves v. Kansas City Junior Orpheum Co., 229 Mo.App. 663, 80 S.W.2d 228. Here defendant pleaded the general denial and an affirmative defense under Section 537.125, RSMo 1959, V.A.M.S. It did not plead an affirmative defense based on Section 84.440, supra. After all the evidence was in but before defendant rested, it tried to amend its answer to add an affirmative defense under 84.440 but such amendment was not permitted by the trial court and the defendant on this appeal does not allege error in such ruling.

Under the substantive law set out above, M.A.I. has provided a verdict directing instruction applicable to the present case in M.A.I. 23.04. This was used, with appropriate modification required by the issue of scope of employment, as plaintiff's verdict directing instruction No. 2. No claim is made of improper modification or deviation from M.A.I. form. Likewise, the affirmative defense pleaded by defendant is provided for in M.A.I. 28.10 and this was used as defendant's instruction No. 6. Plaintiff's instruction No. 2 properly negatived defendant's affirmative defense in the manner directed and required by M.A.I. by specific reference to instruction No. 6. Thus instruction No. 2 did submit the issue of lawfulness of the arrest when it referred to instruction No. 6. The two instructions must be read together. Plaintiff was not required to modify M.A.I. 23.04 to negative an affirmative defense not pleaded and submitted.

Defendant further contends that instruction No. 2 is erroneous because it permitted a finding of agency between defendant and Henthorn. This is based on the contention that defendant is not responsible for Henthorn's acts because he is a police officer. What we have heretofore said disposes of this contention adversely to defendant.

■ Defendant complains of the giving of instruction No. 4, the damage instruction, because it refers to "the occurrence mentioned in evidence" and there were several occurrences mentioned in evidence. Instruction No. 4 is M.A.I. 4.01, exactly. The notes on use of this instruction point out that if the damages are produced by two different occurrences and defendant is responsible for only one, then the word "occurrence" should be replaced by a description of the occurrence for which defendant is responsible. Defendant contends that there is more than one occurrence in the case at bar and therefore the instruction is erroneous. The "occurrence" referred to in the instruction is obviously the arrest and detention of plaintiff. Under the plaintiff's evidence the jury could well find that defendant was responsible therefor. No occurrence is shown in evidence for which the jury could not find defendant liable. See McGill v. Walnut Realty Co., 235 Mo.App. 874, 148 S.W.2d 131. Defendant's argument is based on the assumption that the arrest by officer Henthorn was lawful. The jury could find that it was not lawful. What we have said heretofore disposes of this contention. There was no error in giving this instruction.

Defendant contends that the verdict of $2,500.00 actual and $2,500.00 punitive damages is excessive as to both actual and punitive damages. Plaintiff testified that his arrest had caused feelings of humiliation, disgrace and embarrassment; had resulted in a lack of enthusiasm for his work and a fear that in his selling to the public he would encounter someone who would recognize him as the man who was arrested as a thief at Macy's. Defendant brought out that since his arrest plaintiff had been promoted to vice president of the corporation by which he was employed and that the quality of his work had suffered as a result of injuries sustained in two automobile accidents which occurred after his arrest. It was also brought out that he had been arrested in Arkansas for disturbing the peace and had paid $100.00 fine in Belton, Missouri, on each of three charges of disturbing the peace, trespass and assault with intent to kill. Plaintiff testified to the circumstances of each incident in an attempt to explain away the seriousness thereof. We do not need to recite the details.

■ It has been repeatedly held that in assessing actual damages for false arrest the jury can properly consider such things as humiliation, embarrassment and disgrace and that the amount to be awarded is peculiarly within the province of the jury because they must weigh these imponderables and that appellate courts will not disturb such verdicts unless it appears that the jury has abused its discretion. Thus in Carp v. Queen Ins. Co., 203 Mo. 295, 101 S.W. 78, 99, the court said:

"* * * The verdict is a large one, but in a case of this character the amount of damages is largely a question for the jury. The law concedes a wide latitude of discretion to the jury in actions of this class, and their verdict should not be interfered with unless the appellate court can say it was the result of prejudice, passion, or malice. Numerous considerations must necessarily enter into the question of what is just compensation in such a case, but no definite rule can be laid down to any of them. The law has provided that the jury shall decide this question. Disgrace is a relative term. What is such to one man is not necessarily so to another; and, while it applies to each, its effect or measure is great or small as other conditions exist. Mental anxiety and pain caused thereby, and humiliation and danger from a prosecution for a grave criminal offense, are

all conditions for the jury, as well as the jeopardy in which the liberty of the plaintiff was placed by such prosecution. We are unable to say, after a careful consideration of all this evidence, that the verdict of the jury was such as to evince passion, prejudice, or malice towards the defendants by the jury."

To the same effect, see Randol v. Kline's, Inc., 330 Mo. 343, 49 S.W.2d 112; Vaughn v. Hines, 206 Mo.App. 425, 230 S.W. 379; McGill v. Walnut Realty Co., 235 Mo.App. 874, 148 S.W.2d 131; and Quinn v. Rosenberg, Mo.App., 399 S.W.2d 433. In the Vaughn case, supra, plaintiff's unlawful detention was less severe than in the case at bar and a judgment of $1,000.00 actual damages in 1921 was allowed to stand. In Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S.W.2d 687, the court refused to disturb an award of $12,000.00 in 1939, where plaintiff was detained overnight, "mugged", fingerprinted, placed in show-up, etc. In the recent case of Quinn v. Rosenberg, supra, a $10,000.00 verdict was approved (1966). In 1932 in a malicious prosecution case, an award of $12,500.00 actual damages was affirmed by our supreme court in Randol v. Kline's, Inc., supra. Considering the constantly decreasing value of the dollar and mindful of the fact that no two cases are exactly comparable, we conclude that the jury in the case at bar did not abuse the discretion entrusted to it to weigh all of the facts and circumstances presented in evidence by awarding plaintiff actual damages in the amount of $2,500.00.

■ Defendant contends that the evidence will not support an award of actual damages in any amount because plaintiff did not suffer any loss of wages, was promoted by his employer after this occurrence and prior to trial and did not show any other special damages. The foregoing authorities demonstrate that proof of special damages is not a prerequisite to recovery of actual damages for false arrest.

■ Punitive damages are awarded both as punishment for the offender and as a deterrent to the defendant and others. The evidence shows that Macy's have total assets of $117,000,000.00, stockholders' investment of $162,000,000.00 and its shares have a book value in excess of $130,000,-000.00. In Walker v. St. Joseph Belt Ry. Co., Mo.App., 102 S.W.2d 718, the court considered a contention that an award of $5,000.00 punitive damages was excessive and affirmed it. In considering this question the court said, l. c. 726:

"In Sperry v. Hurd, 267 Mo. 628, 185 S.W. 170, loc. cit. 174, it is said in regard to punitive damages: ' * * * a hard and fast rule for the measuring of such damages cannot be declared. Each case turns more or less upon its own peculiar facts. The character and standing of the parties, the malice with which the act was done, and the financial condition of the defendant are elements which should be taken into consideration in awarding damages of this character (Buckley v. Knapp et al., 48 Mo. 152; 8 R.C.L. Secs. 151, 152, and cases therein cited; 2 Sutherland on Damages [3d Ed.] p. 1092), and the amount may be such as would by way of punishment and example serve to deter the occurrence of like acts in the future.'

"The jury thus has considerable range in respect to the amount of the verdict in any particular case, according to the facts in the record thereof. The record in the present case discloses both legal and actual malice. The defendant is a large railroad corporation employing many men. The record does not disclose its financial worth in terms, but does disclose its capitalization for $400,000 and its ownership of valuable properties; and the conclusion is inescapable that an ordinary award of puntive damages only would have but little deterrent effect upon it. The jury doubtless took notice of all of these matters as well as of the act committed, the nature thereof, and all the circumstances surrounding its commission and of all other matters shown

by the record in arriving at the amount of its verdict."

When the amount of the award and the circumstances in the case at bar are compared with those in such cases as Randol v. Kline's, Inc., 330 Mo. 343, 49 S.W.2d 112; Newport v. Montgomery Ward & Co., 344 Mo. 646, 127 S.W.2d 687; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Thompson v. St. Louis-S. F. Ry. Co., Mo. App., 3 S.W.2d 1033; McGill v. Walnut Realty Co., 235 Mo.App. 874, 148 S.W.2d 131; and Wehrman v. Liberty Petroleum Co., Mo.App., 382 S.W.2d 56, we conclude that the jury did not abuse its discretion and the judgment is not excessive.

Lastly, defendant claims error in the trial court's refusal to give its offered instruction F, which reads:

"Your verdict must be for defendant if you believe:

First, George Henthorne, while acting in a dual capacity as an officer of the Kansas City, Missouri Police Department and as an employee of the defendant, arrested the plaintiff for stealing;

Second, George Henthorne had reasonable grounds or probable cause to believe that plaintiff wrongfully had taken or was taking merchandise of the defendant in violation of a Kansas City, Missouri Ordinance.

The term 'stealing' as used in this Instruction means to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing, or retaining possession of his property."

The court did give defendant's instruction No. 6, which reads:

"Your verdict must be for defendant if you believe:

First, defendant was engaged in mercantile trade, and

Second, defendant had reasonable grounds or probably cause to believe that plaintiff wrongfully had taken or was taking merchandise, and

Third, plaintiff's restraint was made in a reasonable manner, and for a reasonable length of time.

The term 'wrongfully taken' as used in this instruction means stealing, that is to say, to appropriate by exercising dominion over property in a manner inconsistent with the rights of the owner, either by taking, obtaining, using, transferring, concealing, or retaining possession of his property."

In support of this contention defendant argues in its brief that "it was prejudicial error to the defendant to preclude the defendant in the submission of the affirmative defense of probable cause, when there was evidence to support it, * * *"

Given instruction No. 6 did submit probable cause in the form provided in M.A.I. 28.10. Defendant was not entitled to two instructions on probable cause and since M.A.I. 28.10 is applicable and appropriate, Civil Rule 70.01(b), V.A.M.R. precludes the giving of defendant's instruction F. Furthermore, since defendant can only be liable under the doctrine of respondeat superior, if Henthorn had probable cause, then defendant had probable cause. Such duplicate instructions would not have been permitted prior to M.A.I. and M.A.I. certainly does not authorize them now.

As to the required finding that Henthorn was acting in a dual capacity, this issue was covered by instructions 2 and 3. Instruction No. 2 was plaintiff's verdict directing instruction which required the jury to find that Henthorn was acting on behalf of defendant and within the scope of his employment before they could return a verdict for plaintiff. Instruction No. 3 defined "scope of employment." If the jury found, as they did, that Henthorn was acting within the scope of his employment, then he could not be acting in a dual capacity, or,

to put it another way, if Henthorn was acting within the scope of his employment, then the fact that he was also a police officer became unimportant and had no effect on defendant's liability.

The judgment is affirmed.

All concur.