M. E. GILLIOZ, Respondent, v. MISSOURI STATE HIGHWAY COMMISSION, Appellant.—No. 38316.—169 S. W. (2d) 901.

Division One, April 6, 1943.

*Raymond G. Barnett* and *Ralph M. Eubanks* for appellant; *James T. Blair, Jr.,* and *Samuel Richeson* of counsel.

*Finch & Finch, Freeland L. Jackson, John A. Eversole* and *Ward & Reeves* for respondent.

 BRADLEY, C.—Action to recover $32,500 held back by defendant as liquidated damages under a contract for the reconstruction of the intercity viaduct between Kansas City, Missouri, and Kansas City, Kansas. Verdict and judgment went for plaintiff in the sum of $42,829.50, including interest. Motion for new trial was overruled and defendant appealed.

The cause was originally filed by plaintiff in three counts. The contract was executed February 29, 1936, and count I was to recover the $32,500 held back as liquidated damages, with interest, for failure of plaintiff to have the viaduct ready for vehicular and pedestrian traffic by August 15, 1936, as the contract provided. The liquidated damages was $500 per day, excluding Sundays and legal holidays. There is no question on the amount of recovery, if the delay was substantially caused by defendant. Count II was to recover $57,515.67 as damages claimed to have been sustained by plaintiff by reason of delays in the work alleged to have been caused by defendant, and count III was to recover, as assignee, $28,609.80 as damages to plaintiff's subcontractor alleged to be due to same causes claimed in count II. In the first trial, the trial court directed a verdict for defendant as to count III and plaintiff let it go at that. And in the first trial the jury found for defendant on counts I and II, and plaintiff appealed. That appeal resulted in affirmance as to count II, but as to count I, the judgment was reversed and the cause remanded for a new trial. See Gillioz v. State Highway Commission, 348 Mo. 211, 153 S. W. (2d) 18.

Back again in the trial court, the venue was changed from Cole County to Washington County; where plaintiff filed an amended petition which is substantially the same as count I in the original petition. The answer is a general denial and pertinent provisions of the contract.

Defendant, appellant here, assigns error: (1) On the refusal of its demurrer to the evidence at the close of the case; (2) on the refusal of its offered instruction No. 11; and (3) on argument of counsel.

Plaintiff's case is bottomed on the proposition that the delay was substantially the fault of defendant and not his, and that defendant therefore had no right to withhold, as liquidated damages, the amount sought to be recovered. The petition alleged that defendant was at fault in several particulars, but plaintiff went to the jury on the allegations that the delay was caused by the failure of defendant (1) to approve shop drawings within a reasonable time after submission by plaintiff; and (2) by defendant's failure to establish, within a reasonable time, grades and levels to which the roadway of the viaduct was to be finished.

On the prior appeal, plaintiff, as to count I, went to the jury on the same grounds of alleged delay, among others, as here. And on the prior appeal, defendant did not claim that plaintiff's evidence did

not tend to show such delay, but claimed [153 S. W. (2d) l. c. 22] that plaintiff, absent compliance with an arbitration clause in the contract, could not sue.

The evidence at the second trial was substantially the same as it was at the first trial on count I. We could not improve on the statement in the prior opinion. It is sufficient here, and we adopt it in so far as it concerns count I, the cause here:

"Plaintiff's contract was executed February 29, 1936. It provided that plaintiff was to commence work within 15 days after notice to proceed. Notice which was given in the latter part of March (after he already had commenced work) required him to begin work on or before April 5. The contract provided for reconstruction of the intercity viaduct, between Kansas City, Missouri, and Kansas City, Kansas, which was the route of U. S. Highway No. 40. (The Missouri part was 4,286 feet, and plaintiff also had another contract for the part in Kansas, made with the Kansas Highway Commission.) The old concrete roadway was to be demolished. Some of the old steel framework was to be removed and replaced with new steel and a new concrete pavement laid. The contract set August 15, 1936, as the date for sufficient completion for opening to traffic and required final completion by October 1, 1936. It provided for liquidated damages at the rate of $500 per day for failure to open for traffic within the time specified. The viaduct was open for traffic on November 4, 1936, and the entire contract fulfilled on January 25, 1937. It is conceded that the contract was fully performed; that there was no disagreement as to the amount due plaintiff for the work done; and that the only dispute was the right of defendant to withhold from the amount due plaintiff under the contract, the amounts claimed for liquidated damages.

"Although the contract was let by the State Highway Commission, the money was all furnished by the United States government and the plans were prepared by the firm of consulting engineers employed by the City of Kansas City, which had built the original viaduct. This old structure had settled so that some of the steel framework was tilted and out of position. No bench mark appeared on the plans and it was necessary to have a grade established to which the new structure should be built. To fix this grade, it was necessary for defendant's engineers to determine with their surveying instruments how much the various parts of the old steel work had sunk below the elevation to which it was originally constructed. This was necessary in order to make the new steel fit so as to bring the new structure up to a level upon which the pavement could be finished on an intended smooth grade line. Plaintiff commenced the work of demolishing the old slab on March 13th, and by April 3rd, had demolished more than 1,000 feet or about one-fourth of it. It was all removed by June 2nd. Plaintiff claimed that the grade line could have been

established from the ground by the inverted rod method before the pavement was removed. Defendant claimed that it was only possible to do this accurately by surveying over the top of the structure after removal of the pavement. The evidence was that defendant's engineer did some of the surveying on April 3rd and 4th and then did not begin again until April 18th; that the first information furnished plaintiff as to the level on any part of the structure was on April 9th; that this determination of levels of various parts thereafter was delayed long after the pavement was removed from such parts; and that final information was not furnished until June 6th.

"It was necessary to have the elevations in order to make the drawings for shims (metal plates of different sizes used to bring the steel work to the proper elevation) which were the first materials it was necessary to have on the ground to begin the reconstruction of the steel work of the viaduct. Shop drawings had to be prepared for these shims and for all other steel work to be fabricated. Plaintiff sublet a contract to the Builders Steel Company for preparing all shop drawings. The first sheets of these drawings were submitted to the Highway Department which did not pass on them but forwarded them to the consulting engineers employed by Kansas City. There was evidence that there was a misunderstanding between defendant and the consulting engineers about this matter; that defendant understood it was to pass on the drawings, but the consulting engineers insisted on passing on them; and that there was quite a little delay on the start before a system was worked out; so that it took at least three weeks to get the first shop drawings approved, when normally four or five days ought to have been enough. Plaintiff's evidence also tended to show considerable delay in passing upon these shop drawings throughout the whole period and some of the first ones were held up until the elevations of the new grade could be furnished to the consulting engineers. This delayed the fabrication of the steel work which was being done by Ryerson & Sons of Chicago."

While not especially pertinent, in all respects, to delay caused by failure of defendant to approve shop drawings and establish grades and levels, there was evidence of other delays, evidence of which appears in the former opinion as follows:

"It was also required that defendant's inspector should inspect all steel at the Ryerson plant (in Chicago) and approve it before it could be used by plaintiff. Plaintiff's evidence showed that defendant had only one inspector during this period; that he was inspecting steel on other projects in plants in cities other than Chicago; that because of this there was considerable delay in obtaining inspecting of the steel for plaintiff's work; and that this delayed several shipments. Finally plaintiff was allowed to have steel shipped without inspection at the Ryerson plant, with the requirement that it be inspected in Kansas City before it was used. Further delay in fabri-

cating the steel was shown by plaintiff's evidence in qualifying of welders at the Ryerson plant. There was evidence that defendant's inspector authorized a certain type of test and that after these tests had been satisfactorily made May 26th to May 28th, they were sent to the State Highway Department at Jefferson City. On June 1st the inspector stated that the tests were not satisfactory and that a different test would be required. The new tests were submitted on June 3rd and were not approved until June 7th. There were also two separate tests required in Kansas City, under similar circumstances, of the welders on the subcontractor's steel erection crew. It was shown that the equipment for this erection crew was shipped from Chicago on April 30th, but this crew was not able to commence erecting steel until June 8th, because of failure of material to arrive. It was further shown that the delay in getting the erection work started and in thereafter keeping continuously under the way also caused delay in building forms for the new pavement and in pouring the concrete.

"There was evidence to show further delay after some of the beams on the east end of the old structure, encased in concrete, were uncovered and found to have deteriorated. These beams were finally condemned and plaintiff was required to replace them. Plaintiff's evidence showed that there was a delay of from eight to ten days after these beams were uncovered before defendant determined what to do about them. There was also a change in the plans, for an approach at the Helmers Manufacturing Company near the east end of the viaduct. Plaintiff showed that he did not get final approval of the shop drawings for this change until July 22nd. Other drawings were approved as late as July 13th to 18th. Plaintiff's evidence further showed that there was some discussion about changing the design of this approach as early as March; that a new design was not due to anything discovered in the field; and that it could have been made at that time. After submitting shop drawings on the basis of the original plan, plaintiff was notified on May 25th to stop work there and was not furnished the new design until June 18th. Because of this delay in making the change, plaintiff's evidence showed that he could not get the fabricated steel for this part of the viaduct on the ground in time to construct that part of it when the steel erection crew was at that place so that they were required to go on beyond it and come back to complete it later. Plaintiff's evidence tended to show that it required longer to do this work, under these circumstances (moving around it and coming back), than if it could have been done when the crew had the machinery at this place ready to do this work in the regular order."

 Plaintiff's instruction No. 3, of which defendant does not complain, shows the theory of recovery. The instruction follows:

"The court instructs the jury that if you find from the evidence that *any substantial part of the delay* on the completion of the via-

duct so that it could not be safely opened to vehicular and pedestrian traffic by August 15, 1936, was caused by the acts of the defendant, its agents, employees or engineers, by their failure, if any, to approve shop drawings within a reasonable time after submission and by their failure, if any, to establish within a reasonable time grades and levels to which the roadway was to be finished, the right of defendant to liquidated damages was cancelled and abrogated, and the defendant had no right to deduct any sum for liquidated damages from the money earned by plaintiff under his contract" (italics ours).

As stated, supra, on the first appeal defendant's contention was not that there was no substantial evidence tending to show that a substantial part of the delay was caused by defendant, but the contention was that the contract provided for arbitration and that plaintiff was bound by such provision. And in the present appeal, defendant does not make the specific contention that there was no substantial evidence tending to show that a substantial part of the delay was caused by defendant, but says that there was "no substantial evidence to support the verdict." To support such contention defendant cites: Normile et al. v. United States, 45 Ct. Cl. 203; Carroll et al. v. United States, 67 Ct. Cl. 513; Carroll et al. v. United States, 68 Ct. Cl. 500; Churchyard v. United States, 100 Fed. 920; Campbell Building Co. v. State Road Commission, 95 Utah, 242, 70 Pac. (2d) 857.

It will not be necessary to review the cases cited by defendant. Neither of them was by the contractor to recover money earned under the contract, but withheld under a liquidated damage provision for delay as in the present case. In these cases the contractor was seeking to recover *damages* resulting from delay, when he, himself had substantially contributed to the delay, or, by the contract, was not entitled to recover. While here, the defendant is seeking to withhold money actually earned by the contractor, but withheld as liquidated damages for a delay to which defendant substantially contributed.

Plaintiff makes the point that, since the pleading and the evidence at the second trial, as to delay, were substantially the same as at the second trial, and since the sufficiency of the evidence was, in effect, ruled in the first appeal, such question is res adjudicata, citing Lober et al. v. Kansas City, 339 Mo. 1087, 100 S. W. (2d) 267; Bradley v. Becker, 321 Mo. 405, 11 S. W. (2d) 8; Davidson v. St. Louis-S. F. Ry. Co., 301 Mo. 79, 256 S. W. 169; Olds v. St. Louis Nat. Baseball Club (Mo. App.), 119 S. W. (2d) 1000. It will not be necessary to rule such point. We hold that there was substantial evidence at the second trial tending to show that a substantial part of the delay was caused by defendant as submitted in instruction No. 3, supra. The demurrer to the evidence was properly refused.

■ Was it error to refuse defendant's instruction No. 11? The instruction follows: "The court instructs the jury that if you find and believe from the evidence that the failure of plaintiff to complete the reconstruction of the viaduct mentioned in evidence to a stage that it would be safely opened to vehicular and pedestrian traffic by August 15, 1936, was occasioned solely by plaintiff's failure, if any, to secure a sufficient number of qualified workmen to carry on said work, then your verdict must be for the defendant."

At the first trial the court gave, on behalf of defendant, instruction I as follows: "The court instructs the jury that if you find and believe from the evidence that the failure of plaintiff to complete the work, contemplated in the contract within the time fixed by the contract, was occasioned solely by plaintiff's failure, if any, to secure qualified workmen to carry on said work, then your verdict must be for the defendant on Counts I and II."

On the prior appeal it was held that there was no evidence to support instruction I. In the prior opinion we said [153 S. W. (2d) l. c. 25]: "We can find no evidence in the record that plaintiff's workmen, or any of them, were not qualified. It is conceded that the work was satisfactorily completed according to the plans and specifications so that the workmen who did it must have been qualified. Defendant points to the delays connected with qualifications of welders. However, even defendant's evidence shows that welders were qualified under the highest required test although plaintiff had claimed the first test was sufficient."

It will be noted that the only difference, in effect, between instruction I given at the first trial and instruction No. 11 refused at the second, is the insertion in instruction No. 11 of the words *sufficient number*. It was pointed out in the prior opinion [153 S. W. (2d) l. c. 25] that "the evidence did not show that the crew was not large enough to handle the steel as fast as it was fabricated and delivered and part of plaintiff's complaint was that defendant caused the delay in obtaining steel and that it was not, for that reason, delivered as fast as plaintiff was prepared to handle it." There was no evidence tending, in the remotest degree, to show that the failure to have the viaduct in such condition that it could be safely opened to vehicular and pedestrian traffic by August 15, 1936, was caused *solely* by plaintiff's failure to secure a sufficient number of qualified workmen. Instruction No. 11 was properly refused because not supported by the evidence. See Gundelach v. Compagnie Generale Transatlantique (Mo. Sup.), 41 S. W. (2d) 1, l. c. 2, and cases there cited.

■ On argument of counsel. Judge Finch, in the closing argument for plaintiff, said: "This is the first time that any outside engineers have ever checked shop drawings on a highway contract. It was the boys in Kansas City reaching out to the boys in Jefferson City and saying, 'Here, we want this.' Remember the

time, it was 1936, and the place was Kansas City, and they said, 'Gillioz has this job.'" Then the record shows as follows: "Mr. Eubanks: I think this is a highly political reference. It is a very prejudicial argument. We ask that the jury be instructed to disregard the argument and that the attorney for the plaintiff be reprimanded for making this statement. The Court: Gentlemen of the jury, you are instructed to disregard the statement made by the attorney for the plaintiff. There is no testimony in this case to that effect. You will remember the testimony in this case and be guided by that testimony. Mr. Richeson: Because of the prejudicial argument we move the jury be discharged and a mistrial declared. The Court: The motion will be denied." The only exception saved was to the failure of the court to discharge the jury.

In Hancock v. Kansas City Terminal Ry. Co., 347 Mo. 166, 146 S. W. (2d) 627, l. c. 630, it was well said that we should not find that passion and prejudice resulted merely because the case was aggressively and vigorously presented to the jury by ▮▮▮ counsel unless "coupled with other matters from which it reasonably appears that defendant did not have a fair and impartial trial." There is nothing in the record in the present case to show that defendant did not have a fair and impartial trial, and there is no claim to the contrary. The trial court did all that was requested as to the argument complained of, except to set aside the submission and discharge the jury, and we do not think that the situation required that to be done.

The judgment should be affirmed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.