Carole Ann **WISNER**, Respondent,

v.

S. S. **KRESGE COMPANY**, Appellant.

No. 24634.

Kansas City Court of Appeals, Missouri.

Feb. 1, 1971.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 5, 1971.

Caldwell, Blackwell, Sanders, & Matheny by Dean F. Arnold, Kansas City, for appellant.

Max W. Foust, Kansas City, and Charlotte Thayer, of Thayer & Gum, Grandview, for respondent.

HOWARD, Judge.

This case comes to the writer on reassignment. It is a false arrest case wherein a jury trial resulted in verdict and judgment in favor of respondent in the amount of $1,000.00 actual damages and $8,500.00 punitive damages. We shall refer to the parties as they appeared below.

Defendant's first allegation of error is that the trial court erred in refusing to direct a verdict in its favor because "probable cause" for plaintiff's detention had been established as a matter of law. In view of this contention, we detail the evidence.

Plaintiff was a thirty-four year old woman of good reputation, intelligent and with some experience in business affairs, the wife of a professional engineer with whom she resided in the Grandview community on a 43-acre farm, which the couple operated as a commercial poultry enterprise. At the time with which we are concerned, one of defendant's nationwide chain of retail stores was located in a shopping center near Grandview. It was

managed by a man named Bass. The store was operated on a self-service plan, the merchandise being exposed for sale on open, unattended counters at which customers were invited to make their selections at their leisure. A cashier was stationed at a check-out stand near the exit doors to receive payment for articles purchased. About noon on the occasion in question, plaintiff entered the store with her five-year old son to eat lunch and do some shopping. She was carrying a shopping bag containing her gloves and two separately wrapped packages of clothing she had purchased earlier at another store in the neighborhood. After lunch she left her son at the toy counter to amuse himself while she strolled through the aisles in search of other items on her shopping list. In that way she came to the girdle counter. There she examined the garments on display for size and quality and eventually selected one that seemed satisfactory at the time. Carrying it in her hand, she went next to the hat department, laid the girdle on a counter beside her, and tried on a number of hats without finding one to her taste. Concluding meanwhile that the girdle was not to her taste either, she carried it back to the appropriate counter and replaced it, went by the toy counter to get her son, and left the store without pausing at the cashier's booth. She had been there about an hour and a half but had purchased nothing. At no time had she put the girdle in her shopping bag.

As she was crossing the street in front of the store she was accosted by defendant's manager, Bass, who had evidently followed her out. He said, "You didn't pay for the girdle you took." She replied that she hadn't taken a girdle. "Well," he responded, "you did, and you have to come back in the store. The law requires that we search you." Without another word plaintiff followed Bass back into the store. When they were well toward the rear of it, but before they had reached his office, she stopped and said, "I am not going anywhere with you and you are not going

through my personal things; you are not going to search me, I am leaving." And with that, she did. Bass followed. Plaintiff stopped at a nearby store to use the telephone in the foyer there, and while she was so engaged, Bass waited outside. In a few minutes a member of the Grandview police force drove up in response to a call made or authorized by Bass, and moments later a second policeman arrived in response to a radio call from the first. Bass conferred briefly with them, told them plaintiff had taken a girdle from defendant's store without paying for it, announced his willingness to file a formal complaint against her, and thereupon the three men entered the foyer where plaintiff was waiting. The officers asked her to show them the contents of her purse and shopping bag, and she refused. Being then informed by the police that a "formal inspection" would be the probable consequence of her refusal if she persisted in it, she opened her purse and emptied out the contents of her shopping bag. No girdle was found. Thereupon, the men "just melted away." Neither Bass nor the police laid hands on plaintiff or touched her packages, nor was the affair conducted at any stage in a manner designed to give it undue publicity. Although it took place in full view of passersby, plaintiff saw none she recognized and only one who seemed to have taken any interest in it. That one testified as a witness on plaintiff's behalf.

As soon as the men were gone, plaintiff returned to defendant's store went to the rear and used the telephone to call her lawyers and arrange an immediate conference with them in regard to the incident. From their office, she went later to a doctor's office for treatment for hysterical condition which she says the incident brought on. This suit followed in due course.

■ At the trial, defendant did not call Bass or anyone else to dispute plaintiff's version of the affair, or to account in any way for the suspicion of shoplifting that had led to her detention. In the face of that record, defendant's claim that probable

cause for the detention was shown as a matter of law is without foundation.

▮▮ Defendant's second assignment is that the court erred in permitting plaintiff's counsel (a) to argue "that defendant operated a self-service store inadequately staffed, rather than providing clerks and cash registers," and (b), to inject " 'the golden rule' into the case" by saying to the jury, "(T)oday it can be thee, tomorrow it might be me." We regard the first argument as being fairly within the controverted issues. It can hardly be supposed that plaintiff would have been accused had there been a salesgirl at the counter from whom she could have bought the girdle in the first place and to whom she could have returned it later for refund. If defendant chooses to operate its stores in a manner that precludes a customer from availing herself of the ordinary safeguards against a charge of shoplifting, then it ought to be commensurately cautious about making such a charge. Bass was not warranted in concluding that plaintiff had stolen the girdle simply because no one saw her return it. No one was there to see her. He should have considered the fact before he acted, and the jury was entitled to consider it as a measure of the recklessness with which he acted. The criticism made of the second argument is that it invited the jury to place itself "in plaintiff's shoes." If that was its purpose, which is by no means clear on the full record before us, the transgression was not so serious as to warrant our convicting the trial court of reversible error in overruling the general objection made to it. Edwards v. Lacy, Mo., 412 S.W.2d 419, 421–422.

▮ Finally, defendant insists that the verdict is excessive. Insofar as that complaint is directed to the award of actual damages, it is without merit. An allowance of $1,000.00 for the distress occasioned to plaintiff in the course of the incident is reasonable.

As to punitive damages, defendant asserts simple excessiveness. Its two authorities on this point deal with instances wherein some misconduct of the plaintiff might have played a part in causing her detention. These authorities are not applicable here where the defendant presented no evidence although its store manager, who was the one causing plaintiff's detention, was present throughout the trial. Thus, the record contains no evidence of any reason, logical or otherwise, for plaintiff's detention.

▮ Punitive damages are awarded for the purpose of punishing the wrongdoing defendant and also for the purpose of deterring that defendant and others from similar wrongful conduct in the future. See Chappell v. City of Springfield, Mo., 423 S.W.2d 810, and Woods v. Standard Personal Loan Plan, Inc., Mo.App., 420 S.W.2d 380. The question of whether or not punitive damages shall be awarded and, if so, in what amount rests peculiarly in the discretion of the jury. In exercising such discretion and arriving at its conclusion, the jury must, of necessity, consider all of the facts and circumstances surrounding the incident and the parties to the cause. Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083; Walker v. St. Joseph Belt Ry. Co., Mo.App., 102 S.W.2d 718; Wehrman v. Liberty Petroleum Co., Mo.App., 382 S.W.2d 56; Peak v. W. T. Grant Co., Mo.App., 386 S.W.2d 685; Woods v. Standard Personal Loan Plan, Inc., Mo.App., 420 S.W.2d 380, and Nelson v. R. H. Macy & Co., Mo.App., 434 S.W.2d 767. The punitive damages awarded must have some reasonable relation to the injury inflicted upon the plaintiff. State ex rel. St. Joseph Belt Ry. Co. v. Shain, Mo., 341 Mo. 733, 108 S.W.2d 351, and Woods v. Standard Personal Loan Plan, Inc., Mo. App., 420 S.W.2d 380. In arriving at its award, the jury in considering all of the surrounding circumstances can properly take into consideration the relative financial standing of the parties. The financial worth of the defendant is an important factor. Punitive damages have often been referred to as "smart" money and it takes

only slight consideration to realize that an amount of damages which might "smart" one defendant might be entirely inconsequential to another. See State ex rel. Hall v. Cook, Mo., 400 S.W.2d 39; Walker v. St. Joseph Belt Ry. Co., Mo.App., 102 S.W.2d 718; Peak v. W. T. Grant Co., Mo.App., 386 S.W.2d 685, and Nelson v. R. H. Macy & Co., Mo.App., 434 S.W.2d 767.

 There is no mathematical measure by which the reasonableness of an award of punitive damages can be measured. See Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083, and Walker v. St. Joseph Belt Ry. Co., Mo. App., 102 S.W.2d 718. As a consequence and from the necessities of the situation, the duty of weighing the evidence and arriving at the proper measure of punitive damages is left to the discretion of the jury. See Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24; Beggs v. Universal C.I.T. Credit Corp., Mo., 409 S.W.2d 719; Peak v. W. T. Grant Co., Mo.App., 386 S.W.2d 685; Woods v. Standard Personal Loan Plan, Inc., Mo.App., 420 S.W.2d 380, and Nelson v. R. H. Macy & Co., Mo.App., 434 S.W.2d 767. The appellate court is not authorized to weigh the evidence. Such function is reserved for the jury and the trial court on consideration of a proper after trial motion, see Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189, and the appellate court will not disturb the jury's award of punitive damages unless it plainly appears that the jury has abused its discretion in arriving at the amount thereof. See Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24; Mitchell v. Pla-Mor, Inc., Mo., 237 S.W.2d 189; Beggs v. Universal C.I.T. Credit Corp., Mo., 409 S.W.2d 719; Coonis v. Rogers, Mo., 429 S.W.2d 709, and Peak v. W. T. Grant Co., Mo.App., 386 S.W.2d 685. Such abuse of discretion as would justify an appellate court in upsetting the jury award of punitive damages occurs only where it appears that the amount of punitive damages bears no reasonable relation to the injury inflicted on the plaintiff or the award is the result of improper motive on the part of the jury amounting to misconduct. See State ex rel. St. Joseph Belt Ry. Co. v. Shain, 341 Mo. 733, 108 S.W.2d 351; Menke v. Rovin, 352 Mo. 826, 180 S.W.2d 24; Peak v. W. T. Grant Co., Mo.App., 386 S.W.2d 685, and Woods v. Standard Personal Loan Plan, Inc., Mo. App., 420 S.W.2d 380.

The appellate court will exercise its power to interfere with a jury award of punitive damages only in extreme cases and this power is very sparingly exercised. See Jones v. West Side Buick Auto Co., 231 Mo.App. 187, 93 S.W.2d 1083; and Wehrman v. Liberty Petroleum Co., Mo. App., 382 S.W.2d 56. The evidence in the case at bar reveals no possible excuse, reasonable or unreasonable, for plaintiff's detention. The defendant did not see fit to present any evidence seeking to justify its actions. It was in evidence that in the year of the occurrence, defendant had gross sales of $549,351,625.00. In the year thereafter, its gross sales amounted to $693,136,893.00. During the same two years, its net income was $32,846,680.00 and $47,986,321.00, respectively. Its net worth in these two years was $314,946,861 and $344,272,388.

 In view of all of the circumstances, we cannot say, as a matter of law, that the jury abused its discretion in awarding punitive damages in the amount of $8,500.00 as punishment to this multi-million dollar corporation and to deter it and others from such entirely inexcusable conduct in the future.

The judgment is affirmed.

CROSS, J., concurs.

SHANGLER, P. J., not participating.

COTTEY, Special Judge, concurs as to actual damages and dissents as to punitive damages.