661 F.Supp. 1112 (1987)
MACHINE MAINTENANCE & EQUIPMENT CO., Plaintiff,
v.
COOPER INDUSTRIES, INC., Defendant.
No. 83-2343C(6).
United States District Court, E.D. Missouri, E.D.
June 8, 1987.
*1113 *1114 James J. Raymond, Nicholas J. Lamb, Thompson & Mitcher, St. Louis, Mo., for plaintiff.
Stefan J. Glynias, Evans & Dixon, St. Louis, Mo., Harry M. Reasoner, Ann Lents, Charles W. Schwartz, Richard D. Milvenan, Clara Meek, Houston, Tex., for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court, following a jury trial, on post-trial motions filed by both parties for judgment notwithstanding the verdict or new trial on various claims. The case arises out of the termination of an industrial machinery distributorship agreement. Beginning in 1976, plaintiff Machine Maintenance & Equipment Co. (plaintiff or MM & E) was a distributor for the sale, repair and replacement of defendant Cooper Industries, Inc.'s (defendant or Cooper) Gardner-Denver product line of industrial compressors. In October 1980 the parties entered into a new written distributorship agreement extending this relationship. The agreement contained a termination clause whereby either party could terminate the agreement without cause upon ninety (90) days notice in writing to the other party and that Cooper could terminate it with cause under certain enumerated circumstances upon one day's notice in writing. These circumstances included breach of the agreement by MM & E or any action on its part deemed by Cooper to be detrimental to Cooper's best interests.
By letter dated July 28, 1983 Cooper notified MM & E that the Dealership Agreement was to be terminated for cause on August 3, 1983 because MM & E had not fulfilled its obligations under the Agreement. Specifically, the letter stated that MM & E's sales had steadily declined, that MM & E had not maintained an adequate supply of parts, had not provided service, had not paid its accounts when due, had not sufficiently promoted the sale and use of Cooper's products, and had been the subject of customer complaints. On July 24, 1983 two key MM & E salesmen, Curt Hertel and Jack Bertlesmeyer, had resigned MM & E and formed their own corporation, Power Supply, Inc. (PSI). On August 2, 1983 PSI formally proposed to Cooper that it be granted MM & E's distributorship. On August 19, 1983 Cooper accepted this proposal.
Plaintiff submitted four claims to the jury: (1) defendant's tortious interference with plaintiff's business relations (Missouri common law), (2) defendant's violation of § 1 of the Sherman Act, 15 U.S.C. § 1, by entering into an agreement to eliminate or minimize plaintiff as a competitor in unreasonable restraint of trade, (3) defendant's violation of § 1 of the Sherman Act by entering into an agreement for resale price maintenance, and (4) defendant's violation of § 1 of the Sherman Act by entering into an agreement for non-price restraints in unreasonable restraint of trade. The jury found in favor of plaintiff on the tortious interference claim assessing actual damages at $1,790,342.00 and punitive damages at $10,000,000.00. The jury also found in favor of plaintiff on the two non-price antitrust claims assessing damages at $1,790,342.00 on each of these claims. The jury *1115 found in favor of defendant on the price-fixing antitrust claim.
Defendant submitted four counterclaims to the jury: (1) money owed on account, (2) money owed for equipment ordered but later rejected, (3) false designation of origin in violation of the Lanham Trade-Mark Act, 15 U.S.C. § 1125(a), and (4) false designation of origin under Missouri common law. The jury found in favor of defendant for $121,725.65 on its counterclaim for money owed on account and in favor of plaintiff on the other counterclaims.
Each party has filed a post-trial motion for judgment notwithstanding the verdict or, in the alternative, for a new trial on certain of the jury's verdicts adverse to that party.

DEFENDANT'S MOTION

Motion for J.N.O.V. on Tortious Interference Claim
Defendant argues that it is entitled to judgment notwithstanding the verdict on plaintiff's claim of tortious interference with business relations, because plaintiff failed to introduce sufficient evidence on each of the essential elements of such a claim.
The standard for granting j.n.o.v. is the same under both federal and Missouri law. Brown by Brown v. Syntex Laboratories, Inc., 755 F.2d 668, 671 n. 6 (8th Cir.1985). The trial court must: (a) consider the evidence in the light most favorable to the prevailing party, (b) assume that the jury resolved all conflicts of evidence in favor of that party, (c) assume as true all facts which the party's evidence tended to prove, (d) give that party the benefit of all favorable inferences that may reasonably be drawn from proved facts, and (e) deny the motion if, in light of the above, reasonable jurors could differ as to the conclusions that could be drawn from the evidence. Pumps & Power Co. v. Southern States Industries, Inc., 787 F.2d 1252, 1254 (8th Cir.1986); McGee v. South Pemiscot School District R-V, 712 F.2d 339, 343 (8th Cir.1983). J.n.o.v. should be granted to a defendant if any essential element of plaintiff's claim is deficient under this standard. Richardson v. Missouri Pac. R.R., 677 F.2d 663 (8th Cir.1982). Missouri decisions announce similar principles. See, e.g., Bayne v. Jenkins, 593 S.W.2d 519, 521 (Mo.1980) (en banc).
Under Missouri law, a party alleging tortious interference must show: existence of a contract or valid business relationship or expectation; the interferer's knowledge of that relationship; intentional interference which induces the breach; absence of justification for the interference; and damages, Henry v. Chloride, Inc., 809 F.2d 1334, 1350 (8th Cir.1987); Fischer, Spuhl, Herzwurm & Associates, Inc. v. Forrest T. Jones & Co., 586 S.W.2d 310, 315 (Mo.1979) (en banc). In the present case defendant challenges the sufficiency of plaintiff's evidence on each of these elements but focuses its argument on the absence of justification element.
A justification for interference with business relations recognized by Missouri courts is competition between business rivals, as long as that competition meets the standards for appropriate conduct established in § 768 of the Restatement [2d] of Torts. Henry v. Chloride, Inc., 809 F.2d at 1351; American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d 1135, 1144 (8th Cir.1986); Conoco, Inc. v. Inman Oil Co., 774 F.2d 895, 907 (8th Cir.1985); Briner Elec. Co. v. Sachs Elec. Co., 680 S.W.2d 737, 741 (Mo.App.1984).
Section 768 of the Restatement states as follows:
Competition as Proper or Improper Interference
(1) One who intentionally causes a third person not to enter into a prospective contractual relation with another who is his competitor, or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
(a) the relation concerns a matter involved in the competition between the actor and the other and
(b) the actor does not employ wrongful means and
(c) his action does not create or continue an unlawful restraint of trade and

*1116 (d) his purpose is at least in part to advance his interest in competing with the other.
Comment c to § 767 of the Restatement provides several examples of conduct considered "wrongful" for purposes of § 768, including physical violence, misrepresentations, threats or prosecution of civil or criminal suits, unlawful conduct such as antitrust violations, and violation of business ethics and customs.
It has been explained that "§ 768 accurately expresses Missouri law as to the justification element of the tort in an action between competitors. ... In essence the rule states that competitive conduct which is neither illegal nor independently actionable does not become actionable because it interferes with another's prospective contractual relations." Briner Elec. Co. v. Sachs Elec. Co., 680 S.W.2d at 741; see also Henry v. Chloride, Inc., 809 F.2d at 1351; Conoco, Inc. v. Inman Oil Co., 774 F.2d at 907.
Both Henry v. Chloride, Inc., and Conoco, Inc. v. Inman Oil Co. give support to Cooper's position. In Henry, the fact that three salesmen left the employ of the claimant to work for a competing distributor did not rise to the level of tortious interference by the distributor. The evidence failed to establish that unlawful means were employed to lure the salesmen from the claimant to the competing distributor. Id., 809 F.2d at 1351-52.
Similarly, in Conoco,k it was held that bidding against a competitor to obtain pre-existing customers did not constitute "wrongful means." Id., 774 F.2d at 907.
At least one court applying Missouri law, however, has recognized that "in some circumstances even [conduct between a manufacturer and a terminated dealer] that is itself innocent may constitute unjustified interference." See American Business Interiors, Inc. v. Haworth, Inc., 798 F.2d at 1144 (holding that the defendant's refusal to provide the plaintiff, a terminated dealer of the defendant's products, with pricing information during the termination notice period, thereby precluding the plaintiff from bidding on a job, constituted tortious interference with business relations. The court relied in part on evidence showing that the defendant withheld the information intentionally to divert the potential job from the plaintiff to another favored dealer. Id. at 1145-46).
In the present case the business relationships with which plaintiff alleges wrongful interference are not those between plaintiff and its former salesmen but rather those between plaintiff and its customers. Considering the evidence in accordance with the above-cited standard for j.n.o.v., the Court concludes that the jury could have reasonably believed the following:
Defendant terminated its distributorship agreement with plaintiff without cause with only 34 days notice rather than 90 days notice as provided for in the agreement. Defendant did not give the full 90 days notice so that plaintiff would have a difficult time in securing an alternate supplier. Without a steady supply of compressors and parts plaintiff would not have been able to serve its customers. Defendant's action was motivated by the hope that customers thereby dissatisfied with plaintiff's service would leave plaintiff and switch to PSI, defendant's new distributor. At the same time, defendant acting in concert with Hertel and Bertlesmeyer, actively contacted plaintiff's regular customers using plaintiff's sales records, told the customers that plaintiff was terminated as a distributor for defendant because it was not doing its job and urged the customers to deal with PSI instead of plaintiff. There was sufficient evidence for the jury to believe that on several occasions such contacts were made even before notice of termination was given to plaintiff and during the 34 day notice period.
The Court concludes that defendant's conduct, as a reasonable juror could have found it to be, slips over to the improper side of the "wrongful means" line. The absence of justification element for tortious interference has therefore been supported by sufficient evidence.
The Court further concludes that plaintiff presented sufficient evidence on the *1117 other elements of tortious interference to support the jury verdict in favor of plaintiff. The Court concludes that a reasonable juror could have found from the evidence that but for defendant's "interference" (manner plus contacts and representations to plaintiff's customers), plaintiff's customers would have continued doing business with it as a distributor for a competing quality product. There was also credible evidence that because of defendant's actions plaintiff was unable to secure an alternate product line until January 1984 and that by then plaintiff's customer structure was undermined. The finding that plaintiff sustained actual damages in the form of lost profits as a result of defendant's interference was thus supported by sufficient evidence.
Accordingly, defendant's motion for j.n. o.v. on plaintiff's claim for tortious interference is denied.

Motion for a New Trial on Tortious Interference Claim
In the alternative to its motion for j.n.o.v. on plaintiff's tortious interference claim, defendant moves for a new trial on this issue. Defendant argues that it is entitled to a new trial because the verdict is excessive and is the result of cumulative court error in the admission of evidence.
The question of whether a new trial is to be granted is a federal procedural question to be decided by reference to federal law. England v. Gulf & Western Mfg. Co., 728 F.2d 1026, 1029 (8th Cir. 1984); Pitts v. Electro-Static Finishing, Inc., 607 F.2d 799, 802 (8th Cir.1979). In considering defendant's motion for a new trial, this Court has greater discretion than in considering a motion for j.n.o.v. and may weigh the evidence. Generally, a new trial should be granted only if the record presents prejudicial error or injustice has been done. When, after giving full respect to the jury's findings, the trial judge is left with the definite and firm conviction that the jury has erred, the motion should be granted. Ryan by Ryan v. McDonough Power Equipment, Inc., 734 F.2d 385, 387 (8th Cir.1984); Comerio v. Beatrice Foods Co., 616 F.Supp. 1423, 1427-28 (E.D.Mo. 1985).
After a review of the evidence presented on plaintiff's claim of tortious interference, the Court concludes that the jury's finding of liability, the assessment of actual damages, and the determination that punitive damages should be awarded are not against the weight of the evidence.
Expected profits are by their nature uncertain; they are, however, recoverable in Missouri "when they are made reasonably certain by proof of actual facts with present data for a rational estimate for their amount." Swiss-American Import Co. v. Variety Food Products Co., 471 S.W.2d 688, 690 (Mo.Ct.App.1971) (proof of jobber in action seeking damages for loss of profits resulting from distributor's breach of exclusive contract was sufficient to support award of such damages). The Court concludes that plaintiff's evidence rose to an acceptable level of certainty for the jury to find actual damages in the amount of $1,790,342.00. Plaintiff's expert on statistics presented and explained to the jury detailed and comprehensive charts indicating plaintiff's projected lost profits directly resulting from defendant's challenged conduct.
The Court concludes, however, that the award of $10,000,000.00 as punitive damages on this claim is excessive and cannot stand. The Court reaches this conclusion fully aware of all the relevant factors to be taken into consideration in reviewing a punitive damages award. See Morrill v. Becton, Dickinson & Co., 747 F.2d 1217, 1225 (8th Cir.1984); Wisner v. S.S. Kresge Co., 465 S.W.2d 666, 669-70 (Mo.Ct.App.1971).
The Court does not believe that the liability determination was thereby tainted requiring a new trial on all issues. It has reviewed defendant's assertions of prejudicial error in the admission of evidence and concludes that they are without merit.
Under the circumstances, remittitur of the punitive damages award is the proper *1118 remedy.[1]See Morrill v. Becton, Dickinson & Co., 747 F.2d at 1225; 11 C. Wright & A. Miller, Federal Practice & Procedure § 2815 (1973). Accordingly, the Court requires a remittitur to reduce the punitive damages award to $100,000.00 for the judgment to stand. The Court believes that this is the highest amount of punitive damages supportable by the evidence. If plaintiff declines to file such a remittitur within 20 days of the date of this order and memorandum, a new trial on the issue of damages will be granted.

Motion for J.N.O.V. on Antitrust Claim
Defendant argues that plaintiff failed to establish the elements of plaintiff's claim under § 1 of the Sherman Act on which the jury returned a verdict in favor of plaintiff. Specifically defendant argues that plaintiff failed to establish: (1) a conspiracy and (2) a restrictive practice which constituted an unreasonable restraint on competition.
Section 1 of the Sherman Act, 15 U.S.C. § 1, prohibits "[e]very contact, combination ... or conspiracy in restraint of trade. ..." To establish a violation of this section in an antitrust claim, plaintiff must present direct or circumstantial evidence that reasonably tends to prove that the defendant and others "had a conscious commitment to a common scheme designed to achieve an unlawful objective." Monsanto Co. v. Spray-Rite Service Corp., 465 U.S. 764, 104 S.Ct. 1464, 1471, 79 L.Ed.2d 775 (1984). Circumstances must reveal "a unit of purpose or a common design or understanding, or a meeting of minds in an unlawful arrangement." Id.; Pumps & Power Co. v. Southern States Industries, Inc., 787 F.2d 1252, 1256 (8th Cir.1986).
In the present case the jury found in favor of plaintiff on plaintiff's claims of concerted action to eliminate or minimize plaintiff as a competitor and concerted action to effect other nonprice restrictions. Although concerted action to set prices is per se illegal, concerted action on nonprice restrictions are judged under the rule of reason which requires "a weighing of the relevant circumstances of a case to decide whether a restrictive practice constitutes an unreasonable restraint on competition." Id. at 761, 104 S.Ct. at 1469, citing Continental T.V., Inc. v. GTE Sylvania, Inc., 433 U.S. 36, 97 S.Ct. 2549, 53 L.Ed.2d 568 (1977). See also Assam Drug Co. v. Miller Brewing Co., 798 F.2d 311, 314 (8th Cir. 1986).
The Court concludes that there was sufficient evidence for the jury reasonably to have found that defendant and Hertel and Bertlesmeyer, and subsequently PSI, were parties to an "agreement" or "conspiracy." There was also sufficient evidence for the jury to find that the objective of the common scheme was to eliminate or minimize plaintiff as a competitor. Upon careful consideration of the evidence, however, the Court concludes that there was not sufficient evidence for the jury to find that these objectives were unlawful, i.e., that they constituted an "unreasonable restraint on competition." As stated in A.D.M. Corp. v. Sigma Instruments, Inc., 628 F.2d 753, 754 (1st Cir.1980),
[w]hile it is not inconceivable that "mere" unfair business practices, or business torts, could in the proper situation constitute an antitrust violation, [citation] the transmutation of these state law torts into federal antitrust violations *1119 would have to be based upon a finding that the injuries for which compensation is sought have an unreasonable effect on competition, as well as on a particular competitor.
See also Larry R. George Sales Co. v. Cool Attic Corp., 587 F.2d 266, 273 (5th Cir. 1979) (allegations of sales representative that manufacturer of product conspired with others to divert commissions on sales from plaintiff at most stated cause of action for tortious interference with contractual relations and failed to state claim under § 1 of the Sherman Act).
The exclusion of a competitor "is cause for antitrust concern only if it impairs the health of the competitive process itself." Roland Machinery Co. v. Dresser Industries, Inc., 749 F.2d 380, 394 (8th Cir.1984). See also Brattleboro Auto Sales, Inc. v. Subaru of New England, Inc., 633 F.2d 649, 651 (2nd Cir.1980) (in the absence of evidence that any of the objectionable conduct on the part of automobile distributor had the effect of substantially lessening competition, refusal of the distributor to renew dealership agreement with plaintiff did not violate § 1 of the Sherman Act).
Under such a rule of reason analysis, a defendant must have market power before its conduct can be shown to have an adverse effect on competition. Assam Drug Co. v. Miller Brewing Co., 798 F.2d at 316. "In order to establish that the defendant has market power, the plaintiff must show that the defendant has a dominant market share in a well-defined relevant market." Id. at 318.
In the present case there was no evidence of defendant's market share in the relevant industrial air compressor market, nor any evidence, direct or circumstantial, from which a jury could find any adverse effect on competition as a result of defendant's challenged conduct.
Accordingly, the Court concludes that defendant is entitled to j.n.o.v. on this claim.

Motion for a New Trial on Antitrust Claim
Pursuant to Rule 50(c), Fed.R. Civ.P., the Court will rule on defendant's alternative motion for a new trial on the antitrust claim. The standard for granting such a motion is set forth above. Upon review of the evidence on plaintiff's § 1 Sherman Act claim, the Court believes that a new trial on this claim is warranted. The Court is convinced that the jury erred in finding that defendant's conduct was in unreasonable restraint of trade. Plaintiff concedes that if such a retrial becomes necessary and plaintiff should prevail, plaintiff would not be entitled to recover both tort damages and antitrust damages, but would have to elect its remedy.

PLAINTIFF'S MOTIONS

Motion for a New Trial or J.N.O.V. on Defendant's Counterclaim on Account
Plaintiff argues that the jury verdict in favor of defendant on defendant's counterclaim for money owed on an open account cannot stand because: (1) defendant failed to present sufficient evidence on the elements of such a claim; (2) the jury was not instructed on plaintiff's affirmative defense of set off; and (3) an erroneous measure of damages instruction was given on this claim.
The Court concludes that each of these arguments is without merit. Defendant presented sufficient evidence to support each of the elements of its counterclaim as set forth in J.D. Street & Co. v. Bone, 334 S.W.2d 5, 8 (Mo.1960); Coca-Cola Bottling Co. v. Groeper, 691 S.W.2d 395, 397 (Mo. Ct.App.1985). Plaintiff's evidence did not support submission to the jury of a set off. Finally, any error in giving of Missouri Approved Instruction 4.01 rather than 4.04 as the measure of damages instruction was not prejudicial. The damages instruction was consistent with the verdict director and accurately stated the law. Furthermore, the verdict returned was for an appropriate amount.
Accordingly, plaintiff's motion for a new trial or j.n.o.v. on defendant's counterclaim is denied.

Motions for Attorney's Fees and for Pre-judgment Interest on Antitrust Claim
These motions are rendered moot by the granting of defendant's motion for j.n.o.v. on this claim.

*1120 ORDER
Pursuant to the memorandum filed herein this day,
IT IS HEREBY ORDERED that defendant's motion for judgment notwithstanding the verdict on plaintiff's claim of tortious interference with business relations is denied.
IT IS FURTHER ORDERED that defendant's motion for new trial on plaintiff's claim of tortious interference with business relations is denied on condition that plaintiff file a remittitur to reduce punitive damages on this claim to $100,000. If plaintiff does not file such remittitur within 20 days of the date of this order, a new trial on the issue of damages on plaintiff's claim of tortious interference will be granted.
IT IS FURTHER ORDERED that defendant's motion for judgment notwithstanding the verdict on plaintiff's claim under § 1 of the Sherman Act, 15 U.S.C. § 1, is granted. If this judgment is hereafter vacated or reversed, then, IT IS FURTHER ORDERED that defendant's motion for a new trial on plaintiff's claim under § 1 of the Sherman Act is granted.
IT IS FURTHER ORDERED that plaintiff's motion for new trial or for judgment notwithstanding the verdict on defendant's counterclaim of indebtedness on account is denied.
IT IS FURTHER ORDERED that plaintiff's motion to amend the judgment to add prejudgment interest on plaintiff's antitrust claim is denied as moot.
IT IS FURTHER ORDERED that plaintiff's motion for attorney's fees on the antitrust claim is denied as moot.
NOTES
[1] Although this Court looks to Missouri case law for guidance on the issue of excessiveness, the Court believes that the availability of remittitur as a remedy is a matter of federal law. See Donovan v. Penn Shipping Co., 429 U.S. 648, 85 S.Ct. 835, 51 L.Ed.2d 112 (1977) (per curiam) (whether a plaintiff in a federal court prosecuting a state cause of action can appeal from a remittitur order he has accepted is a matter of federal law); 11 C. Wright & A. Miller, Federal Practice & Procedure § 2803 (1973) (remittitur is properly a matter of federal law); 19 C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 4511 (1982) (remittitur is properly a matter of federal law); but cf. England v. Gulf & Western Mfg. Co., 728 F.2d 1026, 1029 (8th Cir.1984) (federal court considered state case law on availability of remittitur).

Missouri case law relating to doctrine of remittitur is found in Firestone v. Crown Center Redevelopment Corp., 693 S.W.2d 99 (Mo. banc 1985) (abolishes doctrine of remittitur). But see H.B. 700, 84th Gen. Assembly, 1987 Mo.Laws ___ (reestablishes right of trial court to impose remittitur in causes of action after July 1, 1987).